# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1615

_____

National Labor Relations Board,

       Petitioner,

       v.

Brede, Inc.,

       Respondent,

United Food and Commercial
Workers Union, Local 653.

_____

No. 02-1616

_____

       Petitions for Enforcement
       of an Order of the
       National Labor Relations Board.

National Labor Relations Board,

       Petitioner,

       v.

Brede, Inc.,

       Respondent,

Freeman Decorating Company;  *
United Food and Commercial  *
Workers Union, Local 653.  *

_____

Submitted:  December 11, 2002

Filed:  January 7, 2003

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this court to enforce two Board orders issued against Brede, Inc.  After a careful review of the record, we hold that substantial evidence on the record as a whole supports the Board's orders, and that the Board has made no errors of law in its orders.

I.

Brede supplies equipment, material, and labor to trade show and convention promoters.  It employs approximately twenty-five regular decorators, who set up and dismantle exhibits at these events.  When necessary, Brede hires extra decorators. The United Food and Commercial Workers' International Union, Local 653 (Local 653) represents Brede's regular employees, but not the extras.  For a time, Brede hired the extras directly.  However, in 1991, Brede agreed to let Local 653 operate a referral system for hiring extras.

In 1995, Local 653 and Brede began negotiations on a new contract.  Some of the extras, however, decided to seek representation by another union because they were concerned that Local 653 might sacrifice their wage rate to bolster the wage rate

of the regular employees. In September 1995, Decorators' Local 17U won a Board-conducted election on a stipulated unit consisting of all Brede's on-call, casual, extra employees, excluding all other employees covered by other collective bargaining agreements. Later that same month, Local 17U and Brede met for their first bargaining session. One of Local 17U's demands was that it be authorized to run a referral system by seniority. The company, however, indicated that it intended to resume control of the hiring process, ending Local 653's operation of the process. It stated that it would not implement Local 17U's hiring hall proposal during negotiations and suggested Local 17U address the matter at a scheduled October 24, 1995 meeting. The October 24 meeting was not held due to an internal jurisdictional dispute within the International Steelworkers Union regarding whether Local 17U or another local should represent the extra employees at Brede. The company agreed to postpone the October 24 bargaining session, again indicating that it wanted to take the referral system in house. On October 25, 1995, the company wrote to Local 17U stating it remained willing to continue negotiations with the Local as the extras' exclusive bargaining representative. On December 1, 1995, the company began operating the referral system without notifying Local 17U of its intended actions. In late December 1995, the Steelworkers International resolved its internal jurisdictional dispute in favor of Local 17U.

On January 4, 1996, Brede executed a letter of understanding with Local 653 extending the Local's contract with the company and stating that effective December 1, 1995, the company would handle all extra in-house labor. Brede did not give Local 17U notice of that agreement. In February and March 1996, Local 17U and an employee, Lenny Prouty, filed unfair labor practice charges against the company, alleging it had unilaterally changed the referral system and had failed to give the union notice of the proposed change.

In the period beginning in the spring 1997, Local 653 obtained authorization cards from extras in the unit represented by Local 17U. On May 11, 1998, it

submitted these authorization cards to the Minnesota Board of Mediation along with a card check agreement executed by the company. After the card check, the Mediation Service issued a unit determination and certification of explicit bargaining representative, stating that Local 653 was certified as the bargaining representative of extra helpers engaged in decorating for the company. Thereafter the company and Local 653 participated in two bargaining sessions.

In April 1998, Local 17U requested that the company bargain over the rates for extra employees. The company refused to bargain with Local 17U on the issue.

In August 1999, the Board, in response to the unfair labor practice charges filed in 1997, found the company violated §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), by unilaterally implementing changes in its procedure for hiring unit employees, including taking the referral system back in house without providing Local 17U notice and an opportunity to bargain, and that the company violated §§ 8(a)(5) and (1) by substantially increasing its reliance on sources other than those that belonged to the traditional bargaining unit. In a companion case, the Board found the company violated §§ 8(a)(2) and (1) of the Act, 29 U.S.C. §§ 158(a)(2) and (1), by granting recognition and rendering unlawful assistance and support to Local 653 at a time when Local 17U was the lawful bargaining representative of union employees, and by withdrawing recognition from Local 17U and refusing to bargain with it over the terms and conditions of employment for extras referred to the company by the Stage Hands Union. The Board ordered the company to: (1) cease and desist from the unfair labor practices and ordered the company to resume recognizing and bargaining with Local 17U; (2) rescind, at Local 17U's request, all unilateral changes made after Local 17U's certification as bargaining representative of unit employees and bargain with Local 17U over how referrals will be handled; (3) make whole any unit employees who lost work because of the unlawful conduct; and (4) make whole an employee (Prouty) for

any loss he suffered as a result of the company's failure to treat him as a union employee.

## II.

This court enforces NLRB orders "so long as the Board has correctly applied the law and substantial evidence supports its findings." New World Communications v. NLRB, 232 F.3d 943, 945 (8th Cir. 2000). At the outset, it is important to note that Brede does not contest the Board's finding that it violated the Act by substantially increasing its reliance on sources of extras other than its traditional list of on-call employees, by substantially increasing the use of non-unit employees to perform unit work, and by refusing to treat Prouty as a unit member and using him (rather than senior employees) to perform unit work at lower wages. Further, Brede does not contest the finding that it violated the Act by refusing to bargain with Local 17U over the terms and conditions of employment of the extras referred to the company by the Stage Hands Union. Brede also does not contest the finding that it violated the Act by granting recognition to Local 653 at a time when Local 17U was the bargaining representative of the unit employees, and by unilaterally withdrawing recognition in Local 17U. The following issues remain to be decided:

First, Brede claims that its liability for unilaterally taking the referral system in house and attendant actions should be excused under an exception to the general rule against unilateral change in the absence of an overall impasse on bargaining for the agreement as a whole. It argues that it attempted to bargain under the hiring process, but the union was unavailable to negotiate. Thus, Brede could impose changes without notice without violating § 8(a)(5) of the Act.

The Board held by a majority vote that the exception was not applicable. Chairman Hurtgen disagreed, arguing that Brede had not violated § 8(a)(5) of the Act by taking the hiring system back in house. He reasoned that Brede needed a referral

system in place, and that Local 17U was unable to bargain in a system during the period that the jurisdictional dispute was being decided by the International Union. The majority responded that Brede agreed to the temporary hold in negotiations, but that this did not give Brede "license to make unilateral changes in terms and conditions of employment." Brede, 335 N.L.R.B. No. 3, 3 (Aug. 24, 2001).

We agree with the Board's reasoning that:

> during the conversation regarding postponement of the October 24 bargaining session, Local 17U reiterated its position that the referral system was a major issue and it was not waiving its position. Brede neither objected to the hold on negotiations, nor gave any indication that the referral system was a pressing concern that needed to be addressed immediately.

Id. We would add that Brede's acquiescence to a card check by the Minnesota Mediation Service seriously weakens Brede's argument that it made the change because of necessity. It rather indicates that Brede cooperated with Local 653 in an effort to destroy Local 17U's status as the certified bargaining agent for the extra employees.

Next, Brede asserts that because Local 17U was aware of its intention to take the referral system in-house, they provided 17U with sufficient notice. The Board disagreed. Chairman Hurtgen did not dissent against this aspect of the majority's decision, and we are not persuaded that the Board acted improperly. While it is true that the union was aware that Brede intended to make the referral issue a subject of negotiations and wanted to take back the referral system, it never told the union that it would take this action immediately.

Next, Brede claims it allowed the union sufficient time to respond to the unilateral change. Again, the decision of the Board on this issue was unanimous and is well supported by the record as a whole.

Brede next argues that exigent circumstances permitted Brede's conduct, regardless of the union's availability to bargain. The Board (again with Hurtgen dissenting) found that Brede failed to carry its heavy burden of demonstrating economic exigencies requiring immediate action rather than a long-standing desire to take the referral system in house. See RBE Elec. of S.D., Inc. 320 N.L.R.B. 80, 82 (1995). We agree that the Board's finding is supported by substantial evidence.

Finally, Brede also complains that the Board's remedial order is too broad. We find no merit in this contention and do not address it here.

### III.

Because the Board's findings are supported by the record as a whole, we enforce the Board's orders.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.